TOWNSEND CORPORATION OF AMERICA,
Plaintiff,

*vs.*

CLINTON DAVIDSON, MORRIS M. TOWNSEND, JOSEPHINE TOWNSEND,
A. C. WEDEMEYER, G. B. PILLSBURY, P. C. HACKETT, W. F.
ROCKWELL, C. F. SMITH, R. E. HARTZ, R. F. NELSON, J. R. E.
OZIAS and THE GAYO FUND, INC.,
Defendants.

*New Castle, March 30, 1962.*

*Irving Morris,* of Cohen & Morris, Wilmington, and *Martin Horwitz* and *Martin E. Gotkin,* New York City, for plaintiff.

*S. Samuel Arsht,* of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants Davidson, M. M. Townsend, Wedemeyer, Pillsbury, Smith, Hartz and Nelson.

*Robert H. Richards, Jr.,* of Richards, Layton & Finger, Wilmington, and *Robert G. Zeller,* of Cahill, Gordon, Reindel & Ohl, New York City, for defendant, W. F. Rockwell.

Defendant P. C. Hackett, pro se.

SEITZ, Chancellor: This is the decision on certain motions made by individual defendants. The first motion to be considered is that made by the defendant Townsend.

Plaintiff sought to sequester stock standing in the name of the defendant Townsend. The only stock purportedly seized was stock standing in the names of Morris M. Townsend and Josephine M. Townsend "as joint tenants."

The defendant Townsend has moved to dismiss the complaint and to vacate and quash the order of appearance and sequestration as to him on the ground that he has not been personally served and none of his property has been effectively seized. More specifically, he contends that the stock purportedly seized is held under a tenancy by the entireties and thus cannot be seized for a claim against him.

Plaintiff tacitly concedes that Morris and Josephine Townsend are husband and wife and that the stock was not validly sequestered if it is held by the entireties. The plaintiff argues, however, that by the use of the language "joint tenants" the parties intended to create a joint tenancy rather than a tenancy by the entireties. I understand that defendant does not deny that a joint tenancy in the stock could have been created in Morris and Josephine Townsend if such intent had been clearly expressed and that in such a situation defendant's interest therein could have been sequestered. There is no evidence showing who caused the stock to be registered in the manner indicated. There is thus presented the issue as to the nature of the interest created in the stock in question.

There is no Delaware case precisely in point but a review of the authorities helps in resolving the present issue. In the *Giant Portland*

*Cement Co. Case,* 26 *Del.Ch.* 32, 21 *A.2d* 697, this court was concerned with the nature of the interest created in stock registered in the names of two individuals who were shown to be husband and wife. The court concluded that in such a situation the estate was deemed to be an estate by the entireties. It is not clear from the opinion whether the ruling was intended to reflect an absolute rule of law or only a presumption. That case is not controlling here because it involved only the listing of the two names on the corporate records. In the present case the words "as joint tenants" appear.

In the prior case of *Godman v. Greer,* 12 *Del.Ch.* 397, 105 *A.* 380, the Delaware Orphans' Court held that where a devise of land to two persons, who were shown to be then married, was explicitly to them as tenants in common the married parties held the property as tenants in common and not as tenants by the entireties. The court's reasoning was that the Married Woman's Act removed certain of the wife's common law legal disabilities and that on the basis of policy and benefit there was no reason why the court should not implement the intent of the testator rather than follow the inflexible so-called common law rule. The importance of this decision is that it emphasized that the nature of the estate was to be found from the expression of intent and not from an inflexible application of the principles of the old common law applicable to married persons.

■ Defendant says that the Godman case is distinguishable on the ground that under 25 *Del.C.* § 701, there is a policy in Delaware favoring a tenancy in common over a joint tenancy. While the statute applies only to real estate defendant says the policy is equally applicable to personal property. Assuming this to be true, the present case involves the issue of joint tenancy versus tenancy by the entireties and so the policy reflected in the statute is not pertinent.

■ Defendant next says that the Godman case was concerned with the carrying out of a testamentary intent which was clearly expressed. In contrast, he says that no such clear evidence of intent is here found by the use of the words "joint tenancy." He argues that such words are ambiguous, citing *Hoyt v. Winstanley,* 221 *Mich.* 515, 191 *N.W.* 213. The Hoyt case appears to support defendant's position. It emphasized that an estate by the entireties is a species of joint

tenancy and is commonly included in that class. There are cases to the contrary. Thus, the court is confronted with the necessity of determining whether the use of the words as "joint tenants" constituted a reasonable expression of an intent to create a joint tenancy as opposed to a tenancy by the entireties.

Since there is no legal prohibition against creating a joint tenancy, I do not see how the intent to create such a tenancy rather than a tenancy by the entireties can be much more clearly stated in affirmative language than by the use of the words "as joint tenants." Of course, it could be recited that the property is held "as joint tenants and not as tenants by the entireties" but I do not believe the law requires such negative language in our situation. It is true that negative language is called for by the statute in situations where there is a desire to create a joint tenancy as opposed to a tenancy in common in real estate. But here we are dealing with two kinds of joint tenancy and so the statutory policy is inapplicable. Moreover, I think there is no reason today to lean toward a construction favoring a tenancy by the entireties. I say this because the advantage to the wife may be as great under a joint tenancy as under a tenancy by the entireties. Also, simple language can be employed to make clear when a tenancy by the entireties is intended.

The authorities are not uniform on the approach to this matter but I think the reasonable inference from the Delaware cases and the effect of the modern view as to the rights of a wife dictate the conclusion that by the language employed here a joint tenancy was intended and created. Compare *Wolf v. Johnson,* 157 *Md.* 112, 145 *A.* 363; 41 *C.J.S. Husband and Wife* § 31b (2); 1 *Christy, Transfer of Stock,* § 75. Defendant Townsend's motion will therefore be denied.

■ Certain defendants ("defendants") have moved to dismiss the action for lack of jurisdiction over them because there was no effective service of process with respect to the subject matter of the supplemental amended complaint. The history of this action is important to the disposition of these motions.

A stockholder's derivative action was filed and a sequestration order entered seizing the stock of the defendants. Thereafter the defendants appeared and the sequestration of their stock was vacated.

The defendants filed motions raising jurisdictional and other attacks upon the complaint. These motions were not brought on for decision. Rather, an amended complaint was filed. Thereafter, a motion was filed and granted staying the proceedings. Still later the stay was lifted and, on application, Townsend Corporation of America, the corporation for whose benefit the action was commenced, was realigned as plaintiff and filed a supplemental amended complaint which was allowed without prejudice to defendants' right to assert the matter here considered. It is this complaint which is now under attack.

Defendants contend that the eleven count supplemental amended complaint confronts them for the first time with a new plaintiff and with many claims not asserted against them at the time they elected to appear in Delaware and contest the subject matter of the original complaint. Although stated in different ways, all the defendants are saying that their appearances should be limited to the subject matter of the original complaint because they elected to appear to defend those charges rather than default. Plaintiff claims that the defendants elected to appear under the statute which authorizes a "general appearance" and they must be deemed to have submitted themselves to the jurisdiction for all purposes properly permitted by the rules of court.

Plaintiff first urges that the subject matter of six of the eleven counts of the supplemental amended complaint is found in the original complaint while that of another count is found in general terms. It says that three other counts involve transactions not specifically alleged in the original complaint but encompassed within the language concerning unspecified "otherwise unlawful and improper transactions." Finally, it admits that one count refers to events occurring after the filing of the original complaint.

It is pertinent first to compare the subject matter of the original complaint with that appearing in the supplemental amended complaint. I say this because to the extent defendants were fairly put on notice of certain claims and their general nature they cannot raise the problem above the dignity of an issue as to the sufficiency of the pleading. Any such alleged deficiency would not create a jurisdictional or constructive fraud problem.

I will not lengthen this opinion unduly by here comparing the two complaints in great detail. After having compared them I am satisfied that though not so artfully worded in the original complaint as in the supplemental amended complaint, most of the matters alleged in the supplemental amended complaint appear in the original complaint with sufficient definiteness to remove any jurisdictional or constructive fraud issue as to such matters. There are some exceptions. I do not believe the original complaint sets forth any recognizable claim based on a conspiracy. Nor do I believe the so-called Fif Management Company and Fiduciary Counsel, Inc., transactions are set forth in the original complaint as specific wrongs unless, as plaintiff claims, they are embraced within the "otherwise unlawful and improper transactions" allegation of the complaint. They are, however, covered by the original complaint to the extent the complaint alleges violations of the Investment Company Act (15 *U.S.C.A.* § 80a et seq.). I say this because the original complaint complains of stock transactions which violated the Act and the transactions identified above took place prior to the filing of the original complaint.

Can the aforementioned claims in the supplemental amended complaint be justified, as plaintiff argues, on the ground that they are covered by the "otherwise unlawful and improper transactions" allegation of the original complaint? This raises a "nice" question as to whether a claim can be stated so inadequately as not to constitute notice of a claim to a defendant who is in the process of deciding whether or not to elect to appear and defend. I conclude that the language is so indefinite that it did not reasonably put these defendants on notice of the causes of action now sought to be justified under that language. Any other construction would permit the use of similarly uncommunicative language as a justification for adding almost any new cause of action and would compel a non-resident defendant to make his election while completely in the dark as to the full extent of the claims against him.

I thus conclude that to the extent I have found that the supplemental amended complaint is but a more elaborate or artful expression of the subject matter of the original complaint, the defendants' motions no matter how labeled must be denied unless the next contention of some of the defendants has merit. Nor am I passing upon a supple-

mental pleading which in effect brings existing causes of action down to date.

Some of the defendants contend that because the corporation has been realigned as plaintiff, the defendants are entitled to have their appearance stricken and given the opportunity once again to determine whether or not they desire to exercise their election to appear. I cannot agree with this contention. This was originally a derivative action for the benefit of the now plaintiff corporation. Defendants were not misled as to the nature of the action. I do not believe they can claim legitimate prejudice because their adversary is now the corporation rather than one of its stockholders suing on its behalf. The fact that defendants' opponent may now be more economically or otherwise formidable constitutes no legal prejudice to defendants.

The next point made by all defendants is that the addition of causes of action not appearing in the complaint at the time they elected to appear constitutes a form of constructive fraud or lack of procedural due process as to them. This question must be resolved because I have found that certain causes of action appearing in the supplemental amended complaint did not appear in any guise in the original complaint.

Are defendants entitled to some relief with respect to the causes of action which I have found were asserted for the first time in the supplemental amended complaint? The defendants appeared under the provisions of 10 *Del.C.* § 366. It provides in pertinent part as follows:

"(a) If it appears in any complaint filed in the Court of Chancery that the defendant or any one or more of the defendants is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant or defendants to appear by a day certain to be designated. * * * The Court may compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults. Any defendant whose property shall have been so seized and who shall have entered a general appearance in the cause may, upon notice to

the plaintiff, petition the Court for an order releasing such property or any part thereof from the seizure. * * * "

Plaintiff says that the defendants have appeared generally and are thus subject to the jurisdiction of this court for all purposes. Defendants assert that they are non-residents who elected to appear generally to litigate "the cause" as asserted in the complaint. Defendants concede that were they residents the complaint could be amended generally if the court so allowed. But they insist that there is a distinction between resident defendants and non-residents at least under the statute here involved. They correctly say that under the in rem procedure of 10 *Del.C.* § 365, the courts of Delaware have held that it would be a constructive fraud on appearing non-resident defendants to permit an amendment asserting a completely new cause of action. See *Abercrombie v. Davies,* 35 *Del.Ch.* 354, 118 *A.2d* 358; *Perrine v. Pennroad Corp.,* 19 *Del.Ch.* 368, 168 *A.* 196. The basic reasoning behind those cases is that the non-resident defendant is responding to a complaint which compels him to appear and litigate rights in property under the court's jurisdiction or abandon any claim thereto. In such a situation the non-resident is reasonably entitled to assume that he is appearing only to litigate the subject matter which is the basis of the court's jurisdiction. To assert an entirely new cause of action after he has appeared would thus be basically unfair. Does this reasoning have pertinency to a proper construction of § 366?

The plaintiff argues that § 365 and the cases thereunder are not in point because they involve an in rem proceeding; whereas, we are here concerned with what amounts to a foreign attachment proceeding in equity which is used for the purpose of coercing a non-resident defendant's general appearance. It is true that § 365 involves an in rem proceeding whereas § 366 provides jurisdiction on the basis of the seizure of a non-resident's property in Delaware. It is also true that there are no Delaware cases passing directly upon the present issue. Is either factor significant?

The defendants seem to argue that there would be some violation of due process to permit a plaintiff to file a completely new cause of action after a non-resident defendant has appeared under § 366, citing *Schuster v. Schuster, 9 N.J.Super.* 11, 74 *A.2d* 420. I do not reach

that point because I think the matter can be disposed of by a reasonable construction of § 366.

Section 366 provides for an entry of an order directing a non-resident defendant to appear and also provides a procedure by which any such defendant may enter a general appearance "in the cause" and, under proper conditions, have his property released. I am satisfied that the statutory provision authorizing the entry of an order directing the non-resident defendant to appear is a grant of power based upon a complaint as then filed. I also conclude that the use of the words "in the cause," reasonably construed, advise a defendant that he is called upon to appear to respond to the charges as then asserted.

My construction is supported by certain other relevant considerations. For example, the cases under the foreign attachment statutes seem to deny the right to amend to set up a new cause of action after a defendant's property has been seized. Compare *Maya Corporation v. Smith, (D.Del.)* 32 *F.2d* 350. There is dicta in the Superior Court case of *Epstein v. Mittelman,* 52 *Del.* (II *Storey*) 474, 160 *A.2d* 368, which would tend to support this conclusion. Since our Supreme Court has stated that § 366 is but a form of foreign attachment in equity, *Sands v. Lefcourt Realty Corp.,* 35 *Del.Ch.* 340, 117 *A.2d* 365, it would seem that such cases are persuasively in favor of the construction I have placed upon § 366. At least that is so absent more explicit statutory language which would place a non-resident defendant on notice as to a broader application.

Another reason supporting my construction is that § 366 has been construed to afford a non-resident defendant an election as to whether or not he desires to appear or to default. See *Schwartz v. Miner,* 36 *Del.Ch.* 481, 133 *A.2d* 599. In making this election one obviously important consideration is the scope of the complaint. If a new cause of action can be asserted after the defendant has made his election to appear, it is apparent that the value of his right to elect has been impaired. This points once again to the fact that a defendant should know from the clear words of the statute that the plaintiff has such a right at the time he makes his election, assuming that it could be constitutionally given. Since there is doubt that the statute as presently

written reasonably advises a non-resident that after he has appeared he may be sued without additional process on new causes of action, I conclude that the doubt should be resolved against a construction which would permit such an amendment.

Plaintiff places reliance upon *Sands v. Lefcourt Realty Corp.,* above. In that case the court decided that § 366 did not permit a non-resident defendant to appear specially and defend by an appearance limiting liability to the value of the seized property. That case is not decisive of the present issue because we are here concerned with the question as to whether the non-resident defendants' possible liability may be increased after they have appeared. There is no issue here as to the fact that if this case is decided against these defendants on the merits they will be subject to a personal judgment as to the claims asserted in the original complaint. This is far from saying that their appearance subjected them to possible liability for causes of action not asserted at the time they appeared.

I therefore conclude that those portions of the supplemental complaint should be stricken which incorporated causes of action not asserted at the time the defendants appeared. I should emphasize that it would appear that non-resident defendants who desire to attack the subject matter of an amendment on the grounds here discussed must, as these defendants did, promptly raise them in the action.

Present order on notice.